IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## CHIVOUS ROBINSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 78353     Richard R. Baumgartner, Judge**

---

**No. E2005-01036-CCA-R3-PC - Filed May 19, 2006**

---

The Appellant, Chivous Robinson, appeals the judgment of the Knox County Criminal Court denying post-conviction relief.  Robinson was convicted of second degree murder and solicitation to commit first degree murder and subsequently sentenced to an effective thirty-four year sentence. On appeal, Robinson argues that he was denied his Sixth Amendment right to the effective assistance of counsel, specifically arguing that counsel was ineffective by: (1) not raising the issue of newly discovered evidence on direct appeal; and (2) not seeking jury instructions on the lesser included offenses of reckless homicide and criminally negligent homicide and not appealing the failure of the trial court to instruct on these lesser offenses.  After review, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Joseph Liddell Kirk, Knoxville, Tennessee, for the Appellant, Chivous Robinson.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Randall E. Nichols, District Attorney General; Philip H. Morton and Takisha M. Fitzgerald, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural History**

The Appellant, along with his girlfriend Toni Hill, was indicted for the first degree murder of his ex-wife, Stacy Robinson.  In addition, the Appellant was indicted for solicitation to commit the first degree murder of his ex-wife.

The facts of the case, as established on direct appeal, are as follows:

The [Appellant] and the victim in this case, Ms. Stacy Robinson, were married in the summer of 1997. A son was born to the couple in November of that same year. In the spring of 1998 the couple separated and became quarrelsome over custody and visitation issues involving the child. During this period the [Appellant] complained to at least three (3) witnesses that he was upset over his wife's refusals to let him see his son. The [Appellant] referred to his wife with vulgar names and asked these witnesses if they knew how he could get rid of Ms. Robinson.

Eventually, the [Appellant] solicited Daniel Jones to kill Ms. Robinson. The [Appellant] offered Jones a car and a CD player to murder Ms. Robinson. Jones agreed and the [Appellant] furnished Jones with a map to Ms. Robinson's residence as well as a diagram of the trailer which was occupied by a number of people indicating where each individual slept. The [Appellant] took Jones to the trailer and showed him how to get in the trailer without being seen. Before Jones could commit the murder he was arrested on [other] murder charges.

On November 29, 1998, the woman with whom the [Appellant] had shared an apartment since his separation, Ms. Toni Hill, visited a neighbor while the [Appellant], Ms. Robinson and the couple's son all met in the apartment shared by the [Appellant] and Ms. Hill. Eventually, the neighbor and Ms. Hill returned to the [Appellant's] apartment where the [Appellant] told the neighbor that Ms. Robinson had left so that he could spend some time alone with his son. Later that evening the neighbor observed both the [Appellant] and Ms. Hill struggling to get a large box through the breeze way of the apartment building. The neighbor observed what appeared to be black curly hair inside the box.

On December 12, 1998, fishermen found the body of Ms. Robinson in the Tennessee River. Her neck and hands had been duct taped. The cause of death was strangulation.

The [Appellant] testified that during the November 29 visit by Ms. Robinson and the couple's son he and his ex-wife argued over whether the child could spend the night with the [Appellant] and Ms. Hill. During the argument the [Appellant] pushed Ms. Robinson causing her to hit a bedpost and rendering her unconscious.

The [Appellant] heard a knock at the door and went to answer it, leaving Ms. Hill alone with the unconscious Ms. Robinson. After about ten (10) minutes he returned to the bedroom where he found Ms. Robinson's lifeless body leaning on the bedroom dresser with a belt around her neck. According to the [Appellant], he and Ms. Hill then stuffed Ms. Robinson's body in a box and dropped it in the Tennessee River.

*State v. Chivous Sirrel Robinson*, No. E2001-00865-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Feb. 28, 2003).

At trial, Ms. Hill's statement to the police was introduced. In her statement, Ms. Hill explained that her involvement in the homicide was limited; however,

> Ms. Hill admitted that she knew the [Appellant] wanted his wife (sic) killed. Ms. Hill reiterated that she found Ms. Robinson on the bedroom floor unconscious with her hands and feet bound in duct tape. According to Ms. Hill the [Appellant] got a belt and started to strangle Ms. Robinson when there was a knock at the door. While the [Appellant] was gone Ms. Robinson started to regain consciousness and make noise. Ms. Hill then pulled on the belt to quieten Ms. Robinson. When the [Appellant] returned he took over pulling the belt for the "couple of minutes" it took to kill Ms. Robinson.

*Id.* Following a jury trial in October 2000, the Appellant was convicted of second degree murder and solicitation,[1] receiving an effective thirty-four sentence. The convictions and sentences were affirmed on direct appeal. *Id.*

On October 16, 2003, the Appellant filed a *pro se* petition for post-conviction relief alleging, among other grounds, ineffective assistance of counsel. Counsel was appointed, and an amended petition was filed on April 6, 2004. Counsel later filed a second amended petition on October 15, 2004. A post-conviction hearing was held on January 27, 2005, at which only the Appellant's stepfather and trial counsel were called as witnesses.

Trial counsel testified that he represented the Appellant at trial and in the direct appeal of his convictions. With regard to Daniel Jones, trial counsel admitted that Jones was a key prosecution witness and that Jones' testimony was the only evidence presented by the State in support of the solicitation charge. Trial counsel also acknowledged that Jones' testimony was important in establishing the Appellant's motive and desire to kill the victim. At trial, Jones, who was an inmate at the time, was thoroughly cross-examined regarding his motives for testifying and the possibility of receiving any reward money in exchange for information about the homicide. Jones related at trial that any money he received would be given to the victim's family. With regard to whether Jones was looking to the State for favorable consideration at his parole hearing, Jones indicated that he had no agreement with the State in this regard.

Prior to the filing of the motion for new trial, trial counsel became aware of a letter written by Daniel Jones indicating that Jones was interested in collecting the reward money, which Jones

---

[1] At the post-conviction hearing, the trial judge noted that Ms. Hill was convicted of first degree murder and received a life sentence.

planned to use to "pay Carthage off."[2]  Trial counsel acknowledged that this contradicted Jones'
testimony at trial where he claimed that any reward money he received would be given to the
victim's family.  However, trial counsel did not raise the apparent contradictions as an issue of newly
discovered evidence on appeal.  At the post-conviction hearing, counsel testified that he did not think
the letter established that an agreement existed between Jones and the State for Jones' trial
testimony.  Moreover, trial counsel testified that he had already impeached Jones' testimony during
the trial and that this letter would only have been cumulative.

With regard to jury instructions on lesser included offenses, trial counsel testified that he
discussed the issue with the Appellant, and, as a matter of strategy, it was decided not to request any
additional instructions beyond second degree murder.  Trial counsel testified that he believed that
the jury would not convict the Appellant of either first or second degree murder and that the
Appellant would likely be acquitted of all charges. At the conclusion of the hearing, the Appellant's
petition was denied.

## Analysis

On appeal, the Appellant has raised the single issue of ineffective assistance of counsel,
asserting that trial counsel's representation was deficient because: (1) he failed to raise the issue of
newly discovered evidence regarding the letter from Daniel Jones on direct appeal; and (2) he failed
to request jury instructions on the lesser included offenses of reckless homicide and criminally
negligent homicide and did not appeal the failure to instruct on those offenses.  To succeed on a
challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the
allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003).
The Appellant must demonstrate that counsel's representation fell below the range of competence
demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  Under
*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must
establish (1) deficient performance and (2) prejudice resulting from the deficiency.  The petitioner
is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and
cannot criticize a sound, but unsuccessful, tactical decision made during the course of the
proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  This deference to the

---

[2]Jones' letter to the Knox County District Attorney General's Office, which was introduced as an exhibit at the
evidentiary hearing, recites as follows:

> The reason that I am writting [sic] you is to inform you that the board of porales [sic] turn [sic] me
> down because of my past criminal history.  Any way the reason for me to write you is to ask you what
> did you work out with Carthage did they drop it or not.  If you had the time to call them on this matter
> yet.  If you can not change their minds then I need to ask you to tell me how to get the money that was
> offerd [sic] in the case.  I know that I at least deserve that since nothing matters to these people even
> cares what I tried to do to help the state of Tennessee out.  So can you please contact the people who
> offerd [sic] the reward and see what they say so that I can pay Carthage off so that I do not have to
> worrie [sic] about them when I do get out.  So please send me the phone number of who That I can
> talk to about the reward money.  THANKS A LOT DANIEL JONES.

tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*, are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

## I. Newly Discovered Evidence

First, the Appellant contends that trial counsel was ineffective by failing to raise on appeal the issue of newly discovered evidence, *i.e.*, the letter written by Daniel Jones. He asserts that the letter directly contradicts Jones' testimony at trial that he did not expect anything in return for his testimony. The effectiveness of appellate counsel's representation is determined on appeal using the same standards as applied to trial counsel.

If a claim of ineffective assistance of counsel is based on the failure of counsel to raise a particular issue on appeal, as is the case before us, then the reviewing court must determine the merits of the omitted issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574 (1986)). If the omitted issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel failed to raise it on appeal. *Id.* Likewise, if the issue has no merit, then the petitioner suffered no prejudice from the failure to raise the issue on appeal. *Id.* Thus, when an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *Id.* Some factors which are helpful in evaluating the effectiveness of appellate counsel include whether the omitted issue was "significant and obvious," whether there was arguably contrary authority on the omitted issue, whether the omitted issue was clearly stronger than the issue presented, and whether the decision to omit the issue was an unreasonable one which only an incompetent attorney would adopt. *Id.* at 888.

To warrant a new trial on the basis of newly discovered evidence, the Appellant must show that: (1) he used reasonable diligence to discover the information prior to trial; (2) the evidence is material; and (3) the evidence is likely to have changed the result of the trial. *State v. Singleton*, 853

S.W.2d 490, 496 (Tenn. 1993); *State v. Goswick*, 656 S.W.2d 355, 358-59 (Tenn. 1983). Generally, a new trial will not be granted when the newly discovered evidence would have no effect other than to impeach the testimony of a witness. *State v. Sheffield*, 676 S.W.2d 542, 554 (Tenn. 1984). However, if the impeaching evidence is so crucial to the Appellant's guilt or innocence that its admission would probably result in an acquittal, a new trial may be ordered. *Singleton*, 853 S.W.2d at 496. All three prongs of the test must be met before an appellant is entitled to a new trial based on newly discovered evidence. *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994).

Clearly, reasonable diligence used to discover the letter is not at issue in this case, as the letter was not written prior to trial. However, we are unable to conclude that the letter is material or that it would have changed the outcome of the trial. First, in view of the letter's ambiguities, the Appellant's argument that the State struck a bargain for Jones' trial testimony is not supported. Second, the letter is offered solely for impeachment purposes. As previously observed, newly discovered evidence in the form of mere impeachment testimony does not typically qualify as a ground for a new trial.

At trial, Jones' credibility was thoroughly examined by trial counsel during his cross-examination, with specific questions directed toward the issues of reward money and parole consideration. Accordingly, we conclude that the Appellant's issue of newly discovered evidence is without merit, and, thus, it necessarily follows that trial counsel's decision not to raise this issue on appeal was not error. Moreover, the post-conviction court found that "as a strategic matter, [trial counsel,] did not raise the letter on direct appeal because he had already attacked Jones' credibility, and the letter would not make a difference since credibility was an issue left for the jury to determine." The strategic decisions of trial counsel, made after adequate preparation, are entitled to deference, and we will not second-guess those decisions on appeal. *Cooper*, 847 S.W.2d at 528. For these reasons, we conclude that trial counsel's failure to raise the issue of newly discovered evidence on appeal did not constitute deficient performance.

## II. Lesser Included Instructions

Next, the Appellant asserts that with regard to his conviction for second degree murder, trial counsel "was ineffective in not seeking jury instructions on the lesser included offenses of reckless homicide and criminally negligent homicide, and for not appealing the failure to instruct on those offenses." As noted, the Appellant was indicted for first degree murder. Trial counsel testified at the post-conviction hearing that, after hearing the State's proof, he did not believe that the jury would convict of first or second degree murder.[3] Therefore, after discussing whether to request instructions on additional lesser included offenses with the Appellant, the decision was made not to do so. As

---

[3] At the conclusion of the evidentiary hearing, the post-conviction court concluded that trial counsel was not deficient in failing to request an instruction on the lesser included homicides because trial counsel's position was based upon an "informed strategic decision." In view of our holding in this case, we find it unnecessary to address the post-conviction court's conclusion. Nonetheless, from the proof in this case, and particularly the proof that the Appellant had solicited and planned the murder of his ex-wife and the statement from the co-defendant that the Appellant was a participant in a violent offense, we question the wisdom of gambling upon an all-or-nothing approach.

a result, the trial court charged the jury with first and second degree murder. During deliberations, a jury question arose regarding "heat of passion," and, over defense objection, the trial court instructed the jury on voluntary manslaughter. The jury subsequently convicted the Appellant of second degree murder.

In *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), our supreme court adopted a three-part test for determining whether an offense is a lesser included offense of the charged offense. *Burns* was decided on November 8, 1999. While the Appellant's offenses in this case were committed in November 1998, his jury trial occurred in October 2000. Because the Appellant proceeded to trial after the *Burns* decision, *Burns* is applicable,[4] as the issue of lesser included offenses is controlled by the prevailing law at the time of trial, not the law at the time of commission of the offense. *See William Glenn Wiley v. State*, 183 S.W.2d 317, 328 (Tenn. 2006). Under *Burns*, it is clear that reckless homicide and criminally negligent homicide are lesser included offenses of first degree murder. *Burns*, 6 S.W.3d at 466-67; *see also State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001); *State v. Sims*, 45 S.W.3d 1, 21 (Tenn. 2001) (appendix).

At the time of the Appellant's trial, it was "the trial court's duty to charge juries as to the law of each offenses included in an indictment . . . whether or not a defendant requests such an instruction." *State v. Wilson*, 92 S.W.3d 391, 394 (Tenn. 2002) (citing T.C.A. § 40-18-110(c) (1997)). In *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006), our supreme court observed that:

> Under this prior version of section 40-18-110, a defendant was not required to request a lesser-included instruction to assign as error the trial court's failure to give such instruction. Therefore, all a defendant need do to assign error to a trial court's failure to instruct on a lesser-included offense was to raise that issue on appeal.

Based on the trial court's duty to instruct the jury regardless of a request to do so from the defendant, this court has previously concluded that defense counsel was not ineffective for failing to request an instruction on a particular lesser included offense. *See Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC (Tenn. Crim. App. at Knoxville, Apr. 19, 2005); *Terrance L. Turner v. State*, No. M2002-02429-CCA-R3-PC (Tenn. Crim. App. at Nashville, Mar. 25, 2004). Accordingly, we conclude in the case before us that trial counsel was not ineffective for failing to request instructions on the lesser included offenses of reckless homicide and criminally negligent homicide because this obligation is statutorily imposed upon the trial court. Thus, the Appellant has failed to establish his claim in this regard.

The Appellant in turn argues that trial counsel was deficient for failing to raise the trial court's failure to instruct on all lesser included offenses of first degree murder on direct appeal. As

---

[4]The State's principal argument on appeal is that as *Burns* was decided after this case, "*Burns* is not entitled to retroactive application because it did not establish a new Constitutional Rule." Moreover, at the post-conviction hearing, the post-conviction court and post-conviction counsel concluded that because this case was tried "prior to the *Burns* decision," the issue of lesser-included offenses was not controlled by *Burns*. As noted above, these conclusions as to the application of *Burns* are incorrect.

noted *supra*, when an appellant asserts ineffective assistance of counsel based upon a failure to raise an issue on appeal, the merits of that issue must be addressed. Accordingly, we must determine if it was error not to charge the jury with regard to the offenses of reckless homicide and criminally negligent homicide.

Under the *Burns* test, as pertinent to this case, an offense is a lesser included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest . . .

*Burns*, 6 S.W.3d at 466-67. The offenses of reckless homicide and criminally negligent homicide are *Burns* part (a) lesser included offenses of premeditated murder.[5] *State v. Rush*, 50 S.W.3d 424, 430-31 (Tenn. 2001) ("Because lesser levels of the statutory hierarchy of mental states (intentional, knowing, reckless, and criminally negligent) are included within the greater levels pursuant to T.C.A. § 39-11-301(a)(2) (2000), an intent element which differs from the intent element of the charged offense only by one of these lower-hierarchy mental states is not actually treated as a differing element."); *see also State v. Walter Wilson*, No. W2001-01463-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 4, 2002).

Once it has been determined that an offense is a lesser included offense, the next step is to consider if the evidence at trial "justified" an instruction on the lesser offense. The court in *Burns* explained this analysis as follows:

First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence,

---

[5]Though not at issue in this case, as it was charged to the jury in response to a jury question, we note that voluntary manslaughter is not a lesser offense of premeditated murder under *Burns* part (a), as it has a differing mental state element which does not neatly fit within the hierarchy. *See State v. Dominy*, 6 S.W.3d 472, 477 n.9 (Tenn. 1999). However, *Burns* part (b)(1) embraces a lesser offense, such as voluntary manslaughter, that "fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability." *Burns*, 6 S.W.3d at 467 n.4.

viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

*Burns*, 6 S.W.3d at 469. In *State v. Allen*, our supreme court held that the trial court "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense." 69 S.W.3d 181, 187-88 (Tenn. 2002). It is "the evidence, not the theories of the parties, [which] controls whether an instruction is required." *Id.* As further observed in *Allen*, 69 S.W.3d at 188, as a general rule, if the lesser offense satisfies the statutory elements test of *Burns*, part (a), the

> evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the *Burns* test. In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater."

In sum, if the lesser offense meets the part (a) statutory elements test of *Burns*, as opposed to a part (b) lesser, an instruction on the lesser is automatically required. Thus, having found the offenses of reckless homicide and criminally negligent to be lesser offense of first degree premeditated murder under part (a) of *Burns*, it was error that they were not charged to the jury.

Having concluded that it was error to fail to instruct the jury on these offenses, our next inquiry is whether that error was harmless beyond a reasonable doubt. *Id.* at 189 (citing *Ely*, 48 S.W.3d at 727). An erroneous failure to charge a lesser included offense to the jury will result in reversal unless a reviewing court concludes beyond a reasonable doubt that the error did not affect the outcome of the trial. *Id.* (citing *State v. Bowles*, 52 S.W.3d 69, 77 (Tenn. 2001)). In making this determination, a court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of the defense, and the verdict returned by the jury. A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser included offenses. *Id.* at 191 (citing *Williams*, 977 S.W.2d at 106).[6] However, harmless error is not limited to such cases. *Id.*

Focusing on these principles, we now must determine whether the failure to instruct on reckless homicide and criminally negligent homicide as lesser included offenses of first degree premeditated murder was harmless error under the circumstances of this case. Criminally negligent

---

[6]The trial court concluded that under *State v. Williams*, 977 S.W.2d 101 (Tenn. 1998), failing to instruct on the lesser offenses did not result in error because the jury rejected the immediately lesser offense of voluntary manslaughter, thus, necessarily rejecting all other lesser offenses not charged. However, this court has concluded that "[d]ue to the unique nature of voluntary manslaughter among homicide offenses, we cannot agree that . . . a strict *Williams* analysis is conclusive or even applicable" as voluntary manslaughter requires an additional factual finding of adequate provocation and "is outside of the traditional line of homicide culpability categories." *State v. Jerry W. Jordan*, No. M1999-00813-CCA-R3-CD (Tenn. Crim. App. at Nashville, Oct. 11, 2001). Thus, *Williams* is not applicable to the facts of the case before us.

homicide, a Class E felony, is defined as "[c]riminally negligent conduct which results in death." T.C.A. § 39-13-212(a) (2003). The culpable mental state of "criminal negligence":

> refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint[.]

T.C.A. § 39-11-302(d) (2003). Reckless homicide, a Class D felony, "is a reckless killing of another." T.C.A. § 39-13-215(a) (2003). The culpable mental state of "reckless":

> refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(c) (2003).

Thus, the lesser included offenses differ from the indicted offense only with regard to the mental state. However, in this case, the Appellant's theory of defense was that Toni Hill had committed the murder. The record reflects that the Appellant denied that he killed his ex-wife. He testified that he left his ex-wife and Toni Hill in the room together, and, upon his return to the room, he found his ex-wife dead with a belt around her neck. Because he asserted that he had no part in the killing, his intent was not a contested issue. Moreover, he asserted that there was no known animosity between the victim and Hill or that Hill was a threat to the victim's safety. Additionally, while there was proof presented through the statement of Toni Hill that it was the Appellant who had strangled the victim, intent was not at issue based upon the Appellant's defense. In view of these facts, we conclude beyond a reasonable doubt that it was harmless error not to charge the lesser offenses, as it has not been shown that submission of the lesser offenses would have affected the outcome of the trial.

Having concluded that any resulting error was harmless, it necessarily follows that the Appellant has failed to carry his burden of establishing prejudice with regard to ineffective assistance of counsel. Moreover, if the resulting error in failing to appeal the failure to charge the lesser offenses was harmless, logic dictates that the outcome of the trial would not have been different absent the error. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the Knox County Criminal Court's denial of the Appellant's petition for post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE